

FILED

2017 SEP 20  PM 1: 19

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD HIGGINBOTHAM,

    Plaintiff,

v.

                      CASE NO.: 3:17-cv-977-J-32JBT

NAVY FEDERAL FINANCIAL GROUP,   **DEMAND FOR TRIAL BY JURY**
LLC,

    Defendant.

_____/

## COMPLAINT

    Plaintiff, Edward Higginbotham (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, Navy Federal Financial Group, LLC (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

    1.    The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

    2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

    3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the

telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11ᵗʰ Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.   There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).   *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11ᵗʰ Cir. 2014).

7.     Venue is proper in this District as Plaintiff resides within this District, in Duval County, Florida, the violations described in this Complaint occurred in this District and Defendant transacts business within this District.

## FACTUAL ALLEGATIONS

8.     Plaintiff is a natural person and citizen of the State of Florida, residing in Duval County, Florida.

9.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10.     Defendant is a corporate entity with its principal place of business located at 820 Follin Lane, Vienna, Virginia 22180, has a registered agent, Corporation Service Company, located in Florida at 1201 Hays Street, Tallahassee, Florida 32301, and which conducts business within the State of Florida.

11.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (904) XXX-8708 (hereinafter "cellular telephone"), and was the called party and recipient of Defendant's hereinafter described text messages.

12.     Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by texting Plaintiff's cellular telephone, within the last four years.

13.     Defendant's texts to Plaintiff continued, on average, twice per week.

14.     Upon information and belief, all of the text messages Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system"

(hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

15.   Furthermore, each of the text messages at issue were placed by Defendant using an artificial or prerecorded message, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

16.   Within the last four years, Defendant began bombarding Plaintiff's cellular telephone with text messages regarding accounts that were not Plaintiff's.

17.   Upon receipt of the text messages, Plaintiff's text identification feature identified the text messages were being initiated from, but not limited to, the phone number/short code 46328.

18.   On several occasions over the last four (4) years, going back to at least 2013, Plaintiff instructed Defendant's agents to stop texting his cellular telephone.

19.   Upon Plaintiff's receipt of one such text from Defendant, in or about 2014, Plaintiff called the Defendant, received Defendant's artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all text messages to his cellular telephone and that he does not bank with Defendant and that such accounts were not his. Furthermore, Plaintiff informed Defendant's aforementioned agent/representative that its incessant text messages were harassing him and demanded Defendant immediately cease all text messages to his cellular telephone; thereby, unequivocally revoking any previously

perceived expressed consent to be texted using Defendant's Autodialer, predictive dialer, artificial voice or prerecorded message.

20.     During the aforementioned phone conversation with Defendant's agent/representative, Plaintiff explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of text messages to Plaintiff's cellular telephone by the use of an Autodialer or artificial voice or prerecorded message.

21.     Each subsequent text message Defendant placed to Plaintiff's cellular telephone was done so after he revoked consent and without the express consent of Plaintiff.

22.     Each subsequent text message Defendant placed to Plaintiff's cellular telephone was knowingly and willfully placed to his cellular telephone without express consent.

23.     On multiple occasions, Plaintiff informed Defendant to immediately cease texting his cellular telephone; however, despite these attempts, Defendant's text messages to Plaintiff's cellular telephone continued.

24.     Defendant texted Plaintiff on his cellular telephone in excess of forty (40) times since 2013.

25.     Due to the extreme volume of text messages Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every text message he received from Defendant; however, the following is a sample of text messages Plaintiff received from November 2015 to June 2017:

> i.  November 28, 2015 at 2:02 a.m.;

   ii.   November 28, 2015 at 2:09 a.m.;

   iii.   December 4, 2015 at 2:48 a.m.;

   iv.   December 4, 2015 at 3:19 a.m.;

   v.   December 11, 2015 at 1:14 a.m.;

   vi.   December 11, 2015 at 1:22 a.m.;

   vii.   December 11, 2015 at 1:52 a.m.;

   viii.   December 18, 2015 at 2:17 a.m.;

   ix.   December 18, 2015 at 2:18 a.m.;

   x.   December 23, 2015 at 1:49 a.m.;

   xi.   December 23, 2015 at 1:56 a.m.;

   xii.   December 23, 2015 at 2:09 a.m.;

   xiii.   December 29, 2015 at 2:15 a.m.;

   xiv.   December 29, 2015 at 2:16 a.m.;

   xv.   January 9, 2016 at 12:59 a.m.;

   xvi.   January 14, 2016 at 1:47 a.m.;

   xvii.   January 14, 2016 at 3:47 a.m.;

   xviii.   January 15, 2016 at 2:29 a.m.;

   xix.   February 3, 2016 at 8:13 a.m.;

   xx.   February 11, 2016 at 1:01 a.m.;

   xxi.   February 17, 2016 at 2:25 a.m.;

   xxii.   February 26, 2016 at 1:27 a.m.;

   xxiii.   March 15, 2016 at 2:22 a.m.;

xxiv.   February 10, 2017 at 1:16 a.m.;

xxv.   February 11, 2017 at 12:33 a.m.;

xxvi.   One text on February 24, 2017;

xxvii.   March 10, 2017 at 12:46 p.m.;

xxviii.   March 11, 2017 at 4:05 a.m.;

xxix.   March 24, 2017 at 2:59 a.m.;

xxx.   April 4, 2017 at 2:15 a.m.;

xxxi.   April 7, 2017 at 2:51 a.m.;

xxxii.   April 11, 2017 at 1:47 a.m.;

xxxiii.   April 15, 2017 at 1:07 a.m.;

xxxiv.   May 5, 2017 at 2:24 a.m.;

xxxv.   May 11, 2017 at 12:48 a.m.;

xxxvi.   One text on May 19, 2017;

xxxvii.   May 23, 2017 at 1:43 a.m.;

xxxviii.   May 23, 2017 at 1:44 a.m.;

xxxix.   June 1, 2017 at 3:09 a.m.;

xl.   June 2, 2017 at 3:04 a.m.; and

xli.   June 10, 2017 at 1:01 a.m.

26.     Defendant has, or should be in possession and/or control of, call logs, text logs, account notes, Autodialer reports and/or other records that detail the exact number of text messages it placed to Plaintiff.

27.     Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to text Plaintiff despite not having Plaintiff's express consent to text his cellular telephone.

28.     Defendant has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed text messages, just as it did to Plaintiff's cellular telephone in this case, with no way for the texted party and recipient of the text messages, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendant's text message list.

29.     The structure of Defendant's corporate policies and procedures permits the continuation of text messages to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such text messages.

30.     Defendant's corporate policies and procedures provided no means for Plaintiff to have his cellular number removed from Defendant's text message list; or, otherwise invoke and/or request the cessation and/or suppression of text messages to Plaintiff from Defendant.

31.     Defendant has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

32.     Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed text messages to Plaintiff's cellular telephone.

33.     None of Defendant's text messages placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

34.     As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

35.     For each text message Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed text messages which made the cellular phone unavailable for legitimate incoming or outgoing calls.

36.     For each text message Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered text messages was unnecessary because he repeatedly asked for text messages to stop. Additionally, Plaintiff expended unnecessary time for unanswered text messages by dealing with notifications and text message logs that reflected the unwanted text messages. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

37.     Each and every text message placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

38.     Each and every text message Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

39.     Each and every text message Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

40.     As a result of aforementioned tenacious text messages and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy and the intrusion upon his right of seclusion. Plaintiff also suffered from stress, anxiety, fear, worry, indignation, emotional distress, mental distress, panic attacks, pain and suffering, diabetic flare-ups, and the phone calls aggravated existing illnesses. Additionally, Plaintiff experienced loss of happiness and concentration. Furthermore, Plaintiff was hindered by the loss of phone battery life and text messages as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I
### (Violation of the TCPA)

41.     Plaintiff incorporates and realleges paragraphs one (1) through forty (40) as if fully set forth herein.

42.     Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the Autodialer text messages it made to Plaintiff's cellular telephone after

Plaintiff notified and requested Defendant that he wished for the text messages to immediately cease.

43.     Defendant repeatedly placed non-emergency text messages to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully submitted,

Jared M. Lee, Esquire
Florida Bar No # 0052284
Morgan & Morgan, Tampa P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Tele: (407) 420-1414
Fax: (407) 245-3485
JLee@ForThePeople.com
MRathbun@ForThePeople.com
JSharpe@ForThePeople.com
Counsel for Plaintiff